In the united states District
court Eastern District of
Tennessee

RoBert Jay Ray          No  21-2383
wendolyn Lee
   vs                   SECT. T MAG5
Judge Chris Craft.
Amy weiRich - District Attorney
Attorney James Jones
officer carrolyn Bry - Bryant


1983 civil Rights complaint


Comes Now wendolyn Lee Files
This civil Rights complaint
Its An Emergency A Matter
of Life And DEATH. Plaintiff
Asking This court To Immediately
get Involved

Plaintiff wendolyn Lee was
Indicted in memphis shelby
County Tennessee for Rape
statutory Rape By An Authority
Figure. Incest where Tatyana
mcgee came To memphis
Tennessee fill out A Police
Report stating she was
sexually Assaulted By Plaintiff

when they was Living in
west memphis Arkansas Not
Tennessee. yet memphis
District Attorney Amy weiRich

TENDERED FOR FILING

DEC 23 2021

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

DEC 2 3 2021

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

TENDERED FOR FILING

2

OBTAINED AN INDICTMENT BY
FABRICATING EVIDENCE. FRAUD
CONSPIRACY AND FALSIFYING
EVIDENCE AND EVEN AFTER
THIS TATYANA TESTIFIED UNDER
OAT THAT SHE CONSENTED AND

THE INCIDENT HAPPENED IN
ARKANSAS NOT TENNESSEE
EMMA MCGEE THE WIFE OF
WENDOLYN LEE WAS DIAGNOSE
WITH CANCER ALL HER REPRODUCTED
ORGANS WAS REMOVED AND HER
INTESTINE DROPED IN THE VAGINA
CAVITY. EMMA CRYED BECAUSE

SHE COULD NOT HAVE KIDS ANYMORE
HER DAUGHTER TATYANA MCGEE
WHO WAS 16 AT THE TIME
AGREE TO HAVE A CHILD FOR
HER MOTHER THROUGH ARTIFICIALLY
INSEMINATION. TATYANA LATER
MARRIED A WOMAN NAME
ELEXUS PRACHARD ELEXUS
COULD NOT HAVE KIDS PUT
TATYANA ON DRUGS TO TRY AND
GET HER CHILD. TATYANA CAME
TO MEMPHIS TENNESSEE AND
FILED CHARGES STATING I
SEXUALLY ASSAULTED HER IN
ARKANSAS

3

DECEMBER THE 9TH JUDGE
CHRIS CRAFT RUSHED ME TO
TRIAL APPOINTED ME A LAWYER
RAPH SAMSON WITH OUT MY
CONSENT AND MY OBJECTION
THE LAWYER OF WALK OVER
TO THE JURY AND TOLD THEM
I AM GUILTY AND A PHYCHO

THE JURY CONVICTED ME
THE JUDGE GETTING READY TO
SEND ME TO A MENTAL INSTITUTION
WHEN I NEVER BEEN DIAGNOSE
BY A DOCTOR I DONT WANT
THIS CASE FILED IN FORM
PAUPER JUST SEND ME A
CASE NUMBER AND I LL HAVE
SOME ONE TO SEND THE MONEY
I WAS KIDNAP FROM NEW ORLEAN
BY MEMPHIS OFFICIAL DUE TO THIS CASE
          CONSPARACY
CRIMINAL CONSPIRACY MAY BE
PROSECUTOR EITHER AT THE PLACE
WHERE THE CONSPIRACY WAS
FORMED OR WHERE ANY OF THE
OVERT ACTS WERE COMMITTED
EACH OVER ACT IS A SEPARATE
CAUSE OF ACTION MIZELL V NORTH
BROWARD HOSP 427 F2D 468
475 5TH CIR 1970

THE KIDNAP FROM NEW ORLEANS
   IS A SEPARATE ACT

                    RESPECTFULLY
12/8/21              worder See

COPY

Filed  5-7-17
Richard D.Saus...
BY

IN THE CRIMINAL COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS
DIVISION VIII

STATE OF TENNESSEE

vs.

WENDOLYN LEE
Defendant.

Indictment: 17-03262/C1705602

## MOTION TO DISMISS FOR LACK OF JURISDICTION

COMES NOW, Defendant, by and through counsel of record, and moves this Honorable Court pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the Tennessee Constitution, Article 1 § 8, to dismiss this Indictment, due to a lack of jurisdiction by the state of Tennessee. In support of this Motion, Defendant states the following:

### Facts

1. Defendant was indicted, under Indictment Number 17-03262/C1705602, for Rape, Statutory Rape and Incest.

2. Defense counsel filed motions for discovery and has received what is believed to be the discovery in its entirety.

3. Mr. Lee was charged based on the accusations of Ms. Tatyana McGee.

4. The alleged victim has on two (2) separate occasions recanted her allegations in their entireties. Nonetheless, even completely disregarding the two (2) recantations, Ms. McGee's statement is the only place an actual location is given as to the occurrence of the alleged assaults and the victim clearly states that the assault happened in West Memphis, Arkansas. (attached as Exhibit A).

1 of 3

5. No testimony or evidence has been provided to establish that any of the alleged c occurred in within Shelby County, let alone the State of Tennessee.

6. Mr. Lee was indicted on this offense without a preliminary hearing and has had no hear concerning this matter prior to the filing of this motion.

## Analysis

"In order to adjudicate a claim, a court must possess both subject matter jurisdiction and personal jurisdiction." *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). "Subject matter jurisdiction relates to the nature of the cause of action and the relief sought." *Id*. It is "conferred by sovereign authority which organizes the court." *Id*. On the other hand, personal jurisdiction "refers to the court's authority to adjudicate the claim as to the person." *Id*. Tennessee Code Annotated section 39-11-103(a) states, "[e]very person, whether an inhabitant of this or any other state or country, is liable to punishment by the laws of this state, for an offense *committed in this state*." (emphasis added). In the case at bar, no offenses were committed within the borders of Tennessee or even alleged to have been committed in Tennessee.

The State loosely alleges that the incidents in questions occurred at a home located within Shelby County, however, there has been no proof, testimony or anything else to support such a claim. There has not even been proof to establish that all of the involved parties ever actually lived in the home. Simply having a Tennessee address does not give rise to the level of creating personal jurisdiction over an alleged offense if no proof has been established that the incidents in question occurred at said address. The Defendant was not found at the address, the victims were not located at the address and no testimony was given that the incidents happened at the address. Furthermore, the Defendant during his detention has provided substantial documentation to the State showing that he was living outside of the state during this time (attached as collective Exhibit B).

COPY

Filed 5-7-1-?
Richard DeSaussu...
BY

IN THE CRIMINAL COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS
DIVISION VIII

STATE OF TENNESSEE

vs.

WENDOLYN LEE
Defendant.

Indictment: 17-03262/C1705602

## MOTION TO DISMISS FOR LACK OF JURISDICTION

COMES NOW, Defendant, by and through counsel of record, and moves this Honorable Court pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the Tennessee Constitution, Article 1 § 8, to dismiss this Indictment, due to a lack of jurisdiction by the state of Tennessee. In support of this Motion, Defendant states the following:

### Facts

1. Defendant was indicted, under Indictment Number 17-03262/C1705602, for Rape, Statutory Rape and Incest.

2. Defense counsel filed motions for discovery and has received what is believed to be the discovery in its entirety.

3. Mr. Lee was charged based on the accusations of Ms. Tatyana McGee.

4. The alleged victim has on two (2) separate occasions recanted her allegations in their entireties. Nonetheless, even completely disregarding the two (2) recantations, Ms. McGee's statement is the only place an actual location is given as to the occurrence of the alleged assaults and the victim clearly states that the assault happened in West Memphis, Arkansas. (attached as Exhibit A).

1 of 3

Two

5. No testimony or evidence has been provided to establish that any of the alleged e occurred in within Shelby County, let alone the State of Tennessee.

6. Mr. Lee was indicted on this offense without a preliminary hearing and has had no hear. concerning this matter prior to the filing of this motion.

## Analysis

"In order to adjudicate a claim, a court must possess both subject matter jurisdiction and personal jurisdiction." Landers v. Jones, 872 S.W.2d 674, 675 (Tenn. 1994). "Subject matter jurisdiction relates to the nature of the cause of action and the relief sought." Id. It is "conferred by sovereign authority which organizes the court." Id. On the other hand, personal jurisdiction "refers to the court's authority to adjudicate the claim as to the person." Id. Tennessee Code Annotated section 39-11-103(a) states, "[e]very person, whether an inhabitant of this or any other state or country, is liable to punishment by the laws of this state, for an offense committed in this state." (emphasis added). In the case at bar, no offenses were committed within the borders of Tennessee or even alleged to have been committed in Tennessee.

The State loosely alleges that the incidents in questions occurred at a home located within Shelby County, however, there has been no proof, testimony or anything else to support such a claim. There has not even been proof to establish that all of the involved parties ever actually lived in the home. Simply having a Tennessee address does not give rise to the level of creating personal jurisdiction over an alleged offense if no proof has been established that the incidents in question occurred at said address. The Defendant was not found at the address, the victims were not located at the address and no testimony was given that the incidents happened at the address. Furthermore, the Defendant during his detention has provided substantial documentation to the State showing that he was living outside of the state during this time (attached as collective Exhibit B).

THREE

Q: Can you explain why you came in contact with the Memphis Police Department on Monday, October 31, 2016?

A: I got called in by Detective Lopez saying that I was the suspect of a shooting involving my sister, Delisha Young.

Q: Why are you here in the Special Victims Unit/Sex Crimes Bureau today, November 2, 2016?

A: To give a statement regarding what happened to me when I was 14.

Q: What happened when you were 14?

A: I got sexually assaulted by my step-father, Wendolyn Lee in West Memphis, Arkansas.

Q: Will you explain in detail what happened before, during, and after you were assaulted by Wendolyn Lee when you were 14 years old?

A: I guess he (Wendolyn) started talking to me about having sexual intercourse and that it (sexual intercourse) was ok with my mother. Then it (sexual intercourse) kind of just started, he Wendolyn) just told me to lay down and I wouldn't have to do nothing and he (Wendolyn) would do the rest. He (Wendolyn) went to (the kitchen) go get some cooking/vegetable oil to put on me, you know to make it easy to (the kitchen) go get some cooking/vegetable oil to my vagina. He (Wendolyn) put his finger in my vagina slowly and asked me did it hurt. I said, yeah it did. Then he (Wendolyn) started to put his penis in my vagina very slow. He (Wendolyn) asked me is it hurting. And I said, yeah it do. He (Wendolyn) just kept going and as if (his penis) was going in and out it (his penis) would go a little further. It's just a little hard for me to remember, I don't remember how it ended.

Q: Did Wendolyn use a condom on this rape incident that you described that occurred when you were 14?

A: No.

Q: Did Wendolyn ejaculate inside of you during this rape incident that you described that occurred when you were 14?

A: No.

Q: Can you remember how many times you had sex with Wendolyn at the age of 14?

A: I'm going to say about thirty times.

Q: Did you ever have sex with Wendolyn past the age of 14?

A: Yes.

Q: How many times did you have sex with Wendolyn past the age of 14?

A: Untill I was 19 years old.

Q: Did the suspect, Wendolyn ever use a weapon to force you to have sex with him?

A: No.

discovery
EXHIBIT 1. M.

SCS00014

Q: Did you ever report the rape to the police before October 31, 2016?
A: No, I just reported it at the place on Madison (1750 Madison) when I told them I wanted to get a restraining order against Wendolyn.

Q: Did you ever tell anyone about the rape incidents?
A: Yes.

Q: Who did you tell?
A: A friend of mines in middle school, Alandria Norfleet. I told my mom, Emma McGee Lee. I also told my sister, Delisha Young.

Q: What was your mother's response to you telling her about Wendolyn raping you?
A: My mom said that it's ok and you are doing it for me. My mom said this will help keep the family together.

Q: Did Wendolyn ever use a condom with you at any time when he had sexual intercourse with you from the time you were 14 years of age until you were 19 years of age?
A: No.

Q: Did you ever become pregnant from having sex during the time when you were 14 to 19 years of age?
A: Yes.

Q: Who is the father of your child?
A: Wendolyn Lee.

Q: What is the sex and age of your child?
A: Female and she is four years old.

Q: Does Wendolyn know that he is the father of your child?
A: Yes.

Q: Have you ever had a paternity test conducted to determine that Wendolyn Lee is the biological father of your daughter?
A: No.

Q: How does Wendolyn know that he is the father of your child?
A: Because I haven't slept with any other guy and he knows that.

Q: Have you ever had sex with any other male besides Wendolyn Lee?
A: No. When I was in high school, I talked to girls and boys. Wendolyn would get mad at me when I would talk to him about boys.

Q: Do you or your family have any cases from the past or currently pending with the Department of Children Services?
A: No

1/30/2017

EXHIBIT

SCSO0018

Q: Did you ever report the rape to the police before October 31, 2016?
A: No, I just reported it at the place on Madison (1750 Madison) when I told them I wanted to get a restraining order against Wendolyn.

Q: Did you ever tell anyone about the rape incidents?
A: Yes.

Q: Who did you tell?
A: A friend of mines in middle school, Alandria Norfleet. I told my mom, Emma McGee Lee, I also told my sister, Delisha Young.

Q: What was your mother's response to you telling her about Wendolyn raping you?
A: My mom said that it's ok and you are doing it for me. My mom said this will help keep the family together.

Q: Did Wendolyn ever use a condom with you at any time when he had sexual intercourse with you from the time you were 14 years of age until you were 19 years of age?
A: No.

Q: Did you ever become pregnant from having sex during the time when you were 14 to 19 years of age?
A: Yes.

Q: Who is the father of your child?
A: Wendolyn Lee.

Q: What is the sex and age of your child?
A: Female and she is four years old.

Q: Does Wendolyn know that he is the father of your child?
A: Yes.

Q: Have you ever had a paternity test conducted to determine that Wendolyn Lee is the biological father of your daughter?
A: No.

Q: How does Wendolyn know that he is the father of your child?
A: Because I haven't slept with any other guy and he knows that.

Q: Have you ever had sex with any other male besides Wendolyn Lee?
A: No. When I was in high school, I talked to girls and boys. Wendolyn would get mad at me when I would talk to him about boys.

Q: Do you or your family have any cases from the past or currently pending with the Department of Children Services?
A: No

1/30/2017

EXHIBIT

SCSO0015

Q: Are you living with the suspect, Wendolyn at this time?
A: No.

Q: Do you think if you were to see the suspect, Wendolyn Lee that you would be able to identify him?
A: Yes.

Q: Were you shown a six person photo spread?
A: Yes.

Q: Did you see the person in the photo spread that is responsible for raping you? If so, what position is he located?
A: Yes and # 6.

Q: Is there anything you would like to add to this statement that would aid us in this investigation?
A: No.

Q: Do you want to prosecute the suspect responsible for raping you?
A: Yes.

Q: Did you give this statement, freely and voluntarily, without any threat, promises, or coercion?
A: Yes.

Q: Can you read and write without the aid of eye glasses?
A: Yes.

Q: I will now ask you to read this statement. If you find this statement to be true and correct, initial the bottom of each page, except the last page. Sign, date, and place the time at the end of the last page. Do you understand?
A: Yes.

VICTIM SIGNATURE                                          DATE          TIME

Investigator's Signature                    11/02/16    5:50 pm
                                            Date       Time

Witness                                     11/02/2016   5:50 PM
                                            Date        Time

1/30/2017

discovery
EXHIBIT 1

In March 2018, Delisha Young, Tatyana McGee, Emma McGee, and Wendolyn Lee filed this action pursuant to 42 U.S.C. § 1983, claiming false arrest and malicious prosecution and seeking a restraining order and damages against Tennessee District Attorney General Amy Weirich and Criminal Court Judge Chris Craft.[1] Lee was arrested on rape charges after his step-daughter, Tatyana McGee, accused him of raping her for years starting when she was fourteen years old. She had Lee's child when she was sixteen years old. The plaintiffs claimed that Tatyana has since recanted her accusations, as evidenced by affidavits attached to the complaint. The plaintiffs asserted that Weirich threatened Tatyana with imprisonment if she did not say that she was raped, and Weirich became angry and threatened that the entire family would go to jail when presented with the family members' statements. Lee later filed amendments to the complaint, claiming that Weirich's malicious prosecution was motivated by an alleged sexual relationship that Weirich had with Tatyana and derogatory Facebook comments made by Lee; that Tennessee lacks jurisdiction to prosecute him because the alleged assaults took place in Arkansas; that Weirich claimed that Judge Craft would help her convict Lee; that Weirich had been arrested by the FBI for various crimes including sexually assaulting Young; that Weirich falsified the foreperson's signature on his grand jury indictment; that Judge Craft ordered Lee to undergo a mental evaluation; and that Weirich was convicted of withholding evidence but did not go to jail. Lee also filed a motion for summary judgment.

The district court sua sponte dismissed the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and denied the motion for summary judgment. The district court first decided that Young, Emma McGee, and Tatyana McGee failed to state claims under § 1983 because Lee's arrest and prosecution did not state a constitutional violation of their rights. The district court then concluded that Lee could not state a claim for malicious prosecution because the criminal proceeding was still ongoing; Weirich and Judge Craft were entitled to absolute immunity for their actions taken as a prosecutor and judge; and the Anti-Injunction Act, 28 U.S.C.

---

[1] The complaint misspells this defendant's name as "Kraft."

(4th Cir. 1976) ("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amendable to suit under § 1983"). The same analysis applies if, as Lee suggests, Jones was appointed as his public defender. *See Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (quoting *Polk Cnty.*, 454 U.S. at 325 ("[P]ublic defenders do not 'act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'")).

Lee's claims against Jones fail to state a claim on which relief may be granted.

Lee contends the MPD and Officer Carolyn Bryant committed "conspiracy and fraud and ma[de] bogus claims in the police report" regarding the Assault. (ECF No. 11 at PageID 8.)

As to the MPD, it is well established that police departments are not entities capable of being sued under § 1983. *See Duck v. Madison Cnty. Sheriff's Dep't*, No. 17-1043, 2018 WL 4381279, at *2 (W.D. Tenn. May 21, 2018). Any claims against the MPD would therefore be treated as claims against the City of Memphis, which may be held liable *only* if Lee's injuries were sustained pursuant to an unconstitutional custom or policy of the City itself. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate such municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees*

11

of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Lee does not allege he has been deprived of a right because of a policy or custom of the City of Memphis.

As to claims that Defendant Bryant made "bogus claims" against Lee concerning the Assault, claims of false arrest and false imprisonment under § 1983 overlap, with false arrest being a subset of false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A false arrest claim requires a plaintiff to show that the underlying arrest lacked probable cause. *See, e.g., Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). Generally, probable cause exists when the police have "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Where an arrest is made pursuant to a grand jury indictment, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). However, the Sixth Circuit has held that "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015); *see, e.g., King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017).

12

Generally alleging only a "bogus" police report, Lee fails to allege that Defendant Bryant acted "knowingly or recklessly" in making false statements that were material to the prosecution in the Assault case. *See King*, 852 F.3d at 587-88 (citing *Webb*, 789 F.3d at 660). Allegations giving rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim for relief. *Twombly*, 550 U.S. at 570. Lee also fails to allege that Bryant presented any testimony at all to the grand jury, let alone false testimony. Therefore, Lee's "bogus claims" allegation against Bryant fails to state a claim for relief under § 1983. He fails to allege that Bryant made false statements that were material to the prosecution. *See, King*, 852 F.3d at 587-88.

Lee's claims against the MPD and Bryant fail to state a claim on which relief may be granted and are subject to dismissal.

Lee names as Defendants Shelby County Mayor Lee Harris, Shelby County Sheriff Floyd Bonner, Memphis Mayor Jim Strickland, and the Shelby County Board of Commissioners for their failure to take corrective action when he "brought this to these politicians' attention." (ECF No. 11 at PageID 8-9; ECF No. 17 at PageID 52.)

Lee cannot sue these Defendants merely because of their respective positions in Shelby County and the City of Memphis. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

13

U.S. at 676. Moreover, a supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter*, 532 F.3d at 575-76; *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint generally does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). Lee does not allege that Defendants Harris, Bonner, or Strickland, or any of the unidentified Board of Commissioners, through their own actions, violated his rights.

Nor does Lee state official capacity claims against these Defendants, which would be construed as claims against Shelby County or the City of Memphis. As stated *supra*, such claims require a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Lee again does not allege that he suffered an injury because of an unconstitutional policy or custom of Shelby County or the City of Memphis.

Therefore, Lee's claims against Harris, Bonner, Strickland, and the Board of Commissioners must be dismissed for failure to state a claim on which relief may be granted.

# Affidavit

I, Tatyana McGee, did artificially inseminate myself with sperm that was not intended for me, after testing positive for ovulation. I had someone to trick Wendolyn Lee out of his sperm and she gave it to me and using a needless syringe, I artificially inseminated myself. I have never been penetrated by a man my whole life. I been a lesbian since I was 12 and I never will be penetrated by a man. I'm into women. Amy Weirich forced me to say something different. I swear under penalty of perjury, that this is a true statement that I am making before this notary and witnesses.

*Tatayana McGee*

Notary

*Deborah K. Hicks*

*Kelvin Yang*

# ACKNOWLEDGMENT

State of Mississippi

County of Hinds

Personally appeared before me, the undersigned authority in and for said county and state, on the 22nd day of September, 2017, within my jurisdiction, the within named Tatyana Emma McGee And Delisha Young (witness), who acknowledged that he/she/they executed the above and foregoing Affidavit.

Deborah K. Hicks

Notary Public
Printed Name: Deborah K. Hicks

My Commission Expires:

11-11-2020

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 28956
DEBORAH K. HICKS
Commission Expires
Nov. 11, 2020
HINDS COUNTY

(seal)

Agency: Memphis Police Department
Officer ID/Name: 0382 | Bryant, Carolyn Y
Date:

Lee Cell-2
4TH N

Narrative Title: Sex Crimes Supplement

RMS Case

Case Number: 1610017170ME

Case Supplement          Sex Crimes Bureau

Offense Report: 1610017170ME

Submitted by: Sgt..C.Bryant #0382

Victim : Tatyana McGee/20 yoa

Date/Time of Occurrence: 10/31/2016@1800hrs.

Location of Occurrence: ▐▬▬▬▬▬▬▬▬

Complainant:

Suspect(s): Wendolyn Lee/57 yoa

In Custody: NO

Weapon/Force used: NO

Was Weapon/Object recovered: N/A

Suspect Vehicle(s): N/A

M.O:

Identification:

Injuries to Victim: NONE

Medical Treatment: NONE

MSARC: NO

Scene officers: N/A

Scene Processed: N/A

Latent Prints: N/A

Recovered Evidence: N/A

Witnesses: NO

Area Canvas: N/A

Weather/Lighting Conditions N/A

Video/Surveillance Camera: N/A

Scene Description: N/A

1/30/2017

discovery

INDIGENT



quadient

US POSTAGE $001.56°
FIRST-CLASS MAIL
1/16/2021
ZIP 38105
011M11254022

DC 18103 194
2021 POPPARS
MEMPHIS TN
38103

MR JON
000 POYDRAS
NEW ORLETON
LOUISIADA
70130

UNITED STATES DISTRICT
COURT EASTERN DISTRICT
OF LOUISIANA